Case number 2021-20311, Jennifer Bridges et al. v. Methodist Hospital You may proceed, Mr. Woodfill. Good morning, Your Honor. My name is Jared Woodfill, and I have the honor of representing approximately 119 former Methodist employees. As this case, as this court is probably well aware, this is a case of first impression. For the first time in the history of our country, we have an employer saying to an employee, as a condition for employment, you have to take an investigational, non-FDA approved or experimental drug as a condition for employment. We believe, Your Honor, that this is inconsistent with the public policy of the state of Texas, beginning with a series of executive orders issued by Governor Greg Abbott. First, Your Honor, I'd like to point your attention to GA-35. In GA-35, which was issued by Governor Abbott on April 15, 2021, he made it very clear that the federal statutes expressly recognize that each individual has the, in open quote, option to accept or refuse administration of the product, close quote, under an emergency use authorization, and then cited 21 U.S.C. section 360 triple B-3E1A2, Roman numeral 3. I think that's important, Your Honor, because if you look at our amended complaint, that is also part of the basis of the public policy exception that we are asking this court to consider and recognize. He goes on to state in GA-35, where I'm sorry to interrupt you, but okay. Right now, I'm trying to figure out, are you bringing a traditional Sabine pilot case and asking for an extension of that, or are you saying that the executive orders of the governor have separate and independent force and you're proceeding in some manner to enforce them against the hospital? What is the, how do you get, because it's my understanding you're not seeking any kind of ADA or religious discrimination or any of those kind of ways to complain on behalf of your, no traditional Title VII grounds or ADA grounds or ADEA or any of those. So it's Sabine pilot, I think is one, but maybe, and then also, are you seeking directly the enforcement of these executive orders? What is your hook? Sure, Your Honor. Well, let's start with the first issue that you raised with respect to Sabine pilot. That was count one, and count two was asking the court to recognize a public policy exception to the employment at will doctrine based on this particular set of facts. And the reason I believe the two are inextricably intertwined is because when you look at Sabine court, the court made that ruling based on a very unique set of facts. And for the first time in the history of the state of Texas, they amended, they judicially created an exception to the employment at will doctrine. So in the spirit of the Sabine pilot case and the public policy exception that was recognized there, we believe that this particular set of facts calls for or requires the court to And I would bring the court's attention to Justice Kirk Harland's concurring opinion, where he made it very clear that our decision today is Sabine pilot in no way precludes us from broadening the exception when warranted in a proper case. We believe this is a proper case. Well, that raises two other questions. You know, we don't do public policy in the spirit of things, you know, because it's not a question of whether we think this was a good idea for the hospital to do this or not, or whether it was good public policy. That's not the question before this court. We have, and the Texas Supreme Court who we have to follow on the Sabine pilot has not extended Sabine pilot, despite numerous requests, certainly, I don't think that you think the Fifth Circuit would on its own adopt a new exception in the spirit. Maybe you do think that, but certainly we would at the very least need to refer that to the certification process, because that is a big ask that you're making, Mr. Woodfill. Yes, Your Honor, and that's one of the requests we've asked. We've asked this court to consider certifying the issue under 58.01 of the Texas Rules of Appellate Procedure in our appellate brief, because this is a case of first impression. The Texas Supreme Court and no state in the state, no court in the state of Texas has actually dealt with this unique set of facts. This is a case of, it's a case of first impression. It is novel. We have never had an employer say as a condition for continued employment, you have to take an investigational or non-approved drug for continuing your employment. So yes, I do believe this is a case of first impression, just like in 1980. Because you keep saying that, and at the time this was filed, it was an emergency vaccination, but you are now relying on things that have evolved since. You rely a lot on GA40, which is October 2021. So let's say what, you know, the elephant in the room, we all know that now it isn't an emergency vaccine anymore. It's been approved, the Pfizer vaccine at least, and I don't remember on Moderna, but the point is there's been an approved vaccination. So if you get to rely on all of this evolution, why can't your opponent rely on the evolution too? Well, Your Honor, first of all, at the time my clients were terminated, it was clearly an investigational drug. It was not approved. And if you look at every executive order- Okay, but the October 2021 order wasn't out then either. Well, in my- And I mean, the Texas sort of public policy has evolved over time. I mean, back in March of 2020 and April of 2020, you were being quarantined for two weeks if you flew to Texas from California. So there's been an evolution. And if we're going to look at that evolution, then what you've relied almost entirely on came out after the time period you're talking about, the June of 2021. Yes, Your Honor, but I would direct the court to the language of each of the executive orders that preceded the August 25th or August 23rd, 2021 approval of the Pfizer vaccine. In each one of Governor Abbott's executive order, he makes it very clear that the drug must be voluntary, that administration of it must be voluntary. So there's a common and consistent thread that runs through every single executive order, whether it be GA-35, whether it be GA-36, whether it be 38, 39, or 40. And that same thread is this, that it needs to be voluntary. And I said, I think when you look at the body of executive orders issued by Governor Abbott, there's a common theme that to engage in public life, one should not be forced to take an emergency vaccine or a COVID-19 vaccine. I think that runs throughout every single executive order from GA-35 up until GA-40. So when we're trying to identify the public policy of the state of Texas, we look at those executive orders because as this court is well aware, the Texas Disaster Act allows the governor to put those orders in place and suspend any statute to the contrary. What's interesting is that the legis... I'm sorry. Mr. Woodfield, that brings me back to my second question that we still hadn't quite gotten to was whether or not you believe that the executive orders provide actual teeth such that you can proceed under the executive orders, are those a hook or a claim? Do you say this violates the executive order and therefore you can, this hospital can, you know, they can't do it if it violates the executive order, or is it just give flavor and guidance of what Texas's views are on the subject? I think both, Your Honor. I do think they can't do it because it violates GA-41. But secondly, I think even more importantly, that this is an opportunity for the court to recognize an exception to the employment at will doctrine that says you can't force an individual to take an experimental drug as a condition for employment. And I think that's consistent with 21 U.S.C. section 360 triple B. I think it's consistent with the series of executive orders issued by Governor Abbott where he makes it very clear that these drugs must always be voluntary. That's the common thread in every single one of these executive orders. Governor Abbott, who clearly is announcing the public policy of the state of Texas, says that taking these vaccines must be voluntary. And the legislature effectively blessed that because the legislature very easily could have removed the disaster proclamation. As this court is well aware, under the Texas Disaster Act of 1975, that disaster proclamation has to be renewed every 30 days. But the legislature has the ability to remove it, to trump it, to take it away, and to remove the governor's power to issue these executive orders under Disaster Act of 1975. I'm sorry. Go ahead. Do any of your clients have traditional employment law claims based upon their particularized circumstances, such as ADA or religious or anything such as that, you know, and I'm not trying to limit that. I'm just. Yes, and you make a very valid point. There are some individuals out of our hundred and eighteen, hundred and nineteen folks that had requested religious exemptions that were denied. But as this court also recognizes, I'm sure in GA 40, Governor Abbott actually put a two. So he went so far as to say it is in any situation there is a personal conscience exemption that's available to any employee. So to the extent that for any other employment law, are you just suing under Sabine Pilot and a generalized GA 35 and its progeny? Yes. What I'm asking this court to consider is recognizing an exception to the employment that will doctrine based on this unique set of facts, facts to be clear. You haven't raised specific facts of someone who had a religious concern, raised it and was denied it. You haven't raised those kinds of facts. And that was in the Houston Methodist was you can raise a religious concern and they have granted some relief on that. So that's just not in front of us. It is someone who says, I just personally don't want a vaccine. Right. That's the person we're dealing with in this case. With one caveat, your honor, one caveat there. Yes, that is the case. But someone who doesn't want to deal, take the vaccine when it's in the investigational process, when it's non FDA approved. So I think there's a problem to me with that is what if we are only going to look at the issue of when it was an emergency vaccine and we agree with you, they shouldn't have fired them then, but they can fire them once. It's not an emergency vaccine. Oh, well, it's not anymore. So I'm wondering what difference that makes. I mean, it just feels like why are we focusing on that? I think it makes a huge difference, Judge, because in the first scenario that my clients are in, we are saying that in the future, an employer can force an employee to take a non approved FDA drug, an investigational or experimental drug as a condition for employment. There's a very clear line of demarcation that occurs. And August 23rd, 2021, when the drug, at least one drug, the Pfizer drug receives FDA approval. So the policy that this court is addressing, in my opinion, here is can you terminate someone for refusing to take an experimental drug? Can we make that a condition? Why isn't that moot? Well, it's not moot, Judge, because they were fired under that scenario. They have lost wages. They've been damaged. There was a period of time from when they were terminated up until the drug became approved in August of 2021. And so one of the reasons we've asked the court to respectfully let the Texas Supreme Court consider this is because it does implicate Texas state law. And if you look at the Amazon. Let me ask you, do you have a case in which the federal courts have declared the policy of the state of Texas? Uh, no, I'm sorry, I'm not really understanding, Judge, when you say the policy, I'm not following. Well, we have ruled in a case and declared a particular policy to be the official policy of Texas. Your Honor, I am not aware of a case where you have necessarily done that when the issue was unique. Is it our role? I mean, how is it our role to tell Texas what its policy is? I don't understand that. And your Honor, that's why we've asked that the question be certified for the Texas Supreme Court so they can answer this case of first impression, which the Supreme Court has never ruled upon. And so we believe using those three factors of the closeness to the issue of the issues related to comedy and practicality. But then you bring up what Judge Haynes has been referencing. How do we ask Texas to declare a policy with respect to a nonexistent situation? Well, your Honor, I believe the situation exists. So at the time my clients were terminated, they were terminated while the drug was in the EUA status. I understand that, but we're asking them, you're getting us to ask the state of Texas for a policy, apply it to your clients and then withdraw it. Well, actually, your Honor, we're asking the court to ask the state of Texas to certify the issue, whether or not it is unlawful or illegal or an exception to the employment at will doctrine to require an individual to take an experimental drug as a condition for employment. If it is an exception to the employment at will doctrine, which we believe the public policy of state of Texas requires, then my clients have damages. OK, so we're back to Sabine. Is that it? Well, not really, your Honor, because Sabine, as you recall from 1985, was a case of first impression. So prior to Sabine, from 1888 up until 1985, an individual could be terminated without a legal act. It was only after that fact pattern was considered by the Texas Supreme Court that an exception to the employment at will doctrine was carved out. So we're asking this court to allow the Texas Supreme Court to look at this unique set of facts and determine whether or not another exception should be carved out of the employment at will doctrine based on forcing an employee to make a decision between feeding their family, paying their house note, paying their car note or taking an alternative choice they shouldn't be required to make. And I think, your Honor, the big distinction in my mind is that we have a drug that is clearly investigational. The fact sheets from the manufacturers, these federal statutes make it very clear that an individual should have a choice to accept or reject it, that they shouldn't be forced to take it. And so we believe Governor Abbott memorialized that in numerous executive orders that were pre-approval, pre-August 23rd, 2021. And we believe that that's the that or should be the policy of state of Texas. I think you've answered Judge Jolly's question and I have a question. So it's my understanding that you're not seeking any declaratory judgment or anything in this case. You're seeking a question to the Texas Supreme Court that your clients have a claim for the time period when they were fired during the experimental judge. You're not seeking some future declaration about what can happen to employees. You're seeking past damages and trying to and you want the Supreme Court to say whether there is a public policy claim that they are entitled to those damages. We'll decide whether they get damages later on down the road if it survives. But do they have a do they state a claim for their past situation? Not trying to say what is the rule about once a vaccine is approved, you're talking about for the employees that were fired during the experimental time. Is that correct? Well, yeah. Your Honor, just to revert back a little bit on just to talk about the history of this case originally filed in state court. And that's what we're moving at. Y'all thought they removed you, right? You would have been asking Texas for this. Yes. And we were going eventually looking at going to the Texas Supreme Court on this issue, but for the removal. So something that's moot because it's relevant directly to the damages that your clients have brought. It is relevant directly to the damages that my clients have brought. OK, thank you. You you've saved some time for rebuttal. And Miss Pfeiffer, if you need five extra minutes because we went a little bit over with Mr. Woodfield, that would be suitable. So please give her 25 minutes instead of 20. Miss Pfeiffer, you may proceed when you're ready. Thank you, Judge Elrod. May it please the court. The plaintiff's claims were all properly dismissed on the pleadings because no matter how the plaintiffs frame their claims, there is no cause of action that allows outwill employees who are not raising any issues about religious or medical exemptions to sue their employer for requiring vaccinations. Houston Methodist complied with Texas law, specifically the health and safety code that requires hospitals to have a vaccine policy and using its business judgment and its medical judgment, it decided that getting its workforce immunized during a global pandemic was a condition of employment. It offered religious and medical exemptions. Those are not an issue in this case. Instead, really the only issue before the court is this sort of global question about whether there's any exception to employment at will. The judgment. Why wouldn't the right place for that to take place? You know, it's it's true that, as I said in the first question, they we had the Texas never extends this. I mean, hasn't so far. Of course, they're free to be Texas. As Judge Jolly points out, we are not Texas. Why isn't the right thing whenever they have had a real policy that's more more lenient than some other states about vaccines in general? Why isn't the right thing to let the Texas Supreme Court opine on whether or not there's a Sabine Pilate esque type public policy exception? Well, it is a question of state law, for sure. But arguments about Texas public policy and whether Texas public policy would allow an exception were not pleaded. This was not presented to the district court. And I think it would be unprecedented for this court to certify a question of state law that was not even presented in the district court. But second, and I think more importantly, the first and most important factor that this court considers in certification is whether the state law is sufficiently clear that this state law is or what the Texas Supreme Court would do. And Texas state law is very clear regarding employment at will. It's it's been the law since 1888 that this state is steadfastly an employment at will state where employees and employers can terminate their employment for good reason, bad reason or no reason at all. And I want to kind of get back to even if we're going to say that the governor's executive orders are public policy, wasn't G.A. 40 the first time that vaccine mandates and non-governmental entities were barred? In other words, the prior ones about vaccine mandates were state agencies mandating vaccines and state entities requiring their employees to have vaccines. But it didn't address businesses, just a completely private business, did it? That's correct, Judge Haynes. So the very first time that there is even any arguable policy, and I say arguable with a lot of weight, that was G.A. 40 that was issued in October of 2021. Well, this case is after Pfizer already was fully approved. Yes. And so because it to me, reading the brief, I thought the focus was on G.A. 40. Now, listening to Mr. Woodville, it was all about this pre-approval of Pfizer as a approved vaccine and not an emergency vaccine. And that was before G.A. 40. So it kind of feels like we're just only supposed to look at what helps the plaintiff and not everything that occurred. But if we're looking at piece by piece at the time that these folks were fired or not permitted to continue on, there was no executive order that said a business couldn't do that. I mean, there was a period of time, as I recall, that Governor Abbott was saying businesses could mandate what they wanted within their business, like masks and things like that. And then that evolved over time to where that wasn't true anymore, right? That's correct. So does that also affect what we even if we assume arguendo an executive order as a public policy, if it's evolved and upped and down this much, can we even discern what it is? Well, Judge Haynes, I think you're exactly right. This case really should be confined to the time period in which the case was pleaded and the dismissal order happened, which all happened in summer of last year. So Mr. Woodville is correct when he's framing the case in terms of emergency use authorizations, because that was the state of the world at the time. And I would point the court to the DOJ opinion that we've cited in our brief that is squarely on point where the DOJ addressed this issue of whether the Food, Drug and Cosmetic Act in any way prohibits public or private entities from acquiring vaccines. The reason it was looking at that issue is because the emergency use authorization stated that people should be told that it is their option to accept or refuse administration of this emergency use product. And the DOJ was analyzing whether that requirement to tell them it's optional in any way prohibited entities from requiring vaccine mandates. And the DOJ concluded that, no, there's nothing about the Food, Drug and Cosmetic Act that prohibits entities from employing vaccine mandates. So we look at this issue. Why do we look at what the DOJ said at all? I mean, the DOJ doesn't bind Texas. The DOJ very well might have a more pro-vaccine, for lack of a better way to phrase it, pro-vaccine position than the state of Texas. And that's certainly not unusual. So why do we, how is that, how does that at all tell us what Texas would say as a public policy matter? Well, I understand and agree with you, Judge Elrod, that it's not in any way controlling on this court, but it simply is a statutory analysis about whether there is even any kind of federal prohibition on vaccine mandates under the Food, Drug and Cosmetic Act. And they say- What is the federal- But in the question of state law. May I ask you, ma'am, what is the federal issue and what is the federal court issue that gives federal courts jurisdiction in this case, from your point of view? The way it was pleaded, and that's really the way the court should analyze this, is whether there is an illegal act under federal law. And the plaintiffs pleaded this Food, Drug and Cosmetic Act statute. And they also pleaded a Health and Human Services statute on human clinical trials. They were looking to federal statutes to say that it was illegal to have this vaccine mandate. And that was the federal question embedded in their subpoenaed pilot claim. So that's why there is a focus in the district court on federal law. They've evolved from that in this court. And so I understand in this court, they're presenting it as a issue to be certified to the Texas Supreme Court based on these executive orders issued after they were terminated. And this is not, that's not exactly the way the plaintiffs file or frame their claim in the district court. Is that correct? Well, in the district court, they pleaded this as a subpoenaed pilot claim, but the illegality, and remember, subpoenaed pilot is making it illegal for or presenting a claim for employees who are fired because they refuse to perform an illegal act. So the way they couch their subpoenaed pilot claim is saying that there were federal statutes that made it illegal for employers to require the vaccine. Ms. Pfeiffer, relatedly, if what they pleaded is not what they're arguing, just assuming arguendo, as you, that's what your position is, why wouldn't the, why wouldn't we affirm, but not, but let, they can go back to state court on their state court claims if they didn't actually get rulings on their subpoenaed pilot as a Texas public pilot. If your argument is that they didn't really ever do Texas, and that was never what the district court considered, that would seem like that would still be a viable claim in the text courts and could be affirmed on all these other federal claims. And then, you know, order to dismiss or remand to the state court, or I think maybe just dismiss and they can bring a new case in the state court. Why wouldn't that happen? The court could certainly do that. And I think what's really needed here is an opinion from this court stating that Texas law is clear, that this employment at will doctrine is clear. The Texas Supreme Court's steadfast refusal to expand that as clear such that we don't see more federal court claims trying this angle. So you want us to rule that the federal, that the Texas law is clear. That's the one thing that you said wasn't argued in their lower court. You want us to rule on the one thing that wasn't argued. No, I would like the court to affirm and the court can affirm on any ground. I, you know, I think the court could keep this narrow, but at the same time, there's there's a need here to clarify the viability of any of these types of claims. And I think the court can treat it as it's been argued that there is no employment at will exception. The Texas Supreme Court and let them clarify it. Well, I mean, the problem is that we either can decide this case based on when it ended, which was June of twenty twenty one in the district court, in which case all of this lengthy briefing about GA40, which the plaintiff did to us on the appeal to us, is irrelevant. Or we can look at the future, how it evolved, and now it's to the point where hospitals that get Medicare funds must have their people vaccinated by federal law. If we're going to talk about now, we just had an argument about that. So I I guess I'm a little bit I found the briefing in this case kind of confusing because it was relying on a lot of things that happened after. But at the time of June twenty twenty one, I don't see where there is an actual executive order that would forbid somebody like Houston Methodist from requiring vaccination, an actual governor, government governor of Texas order. Now, did I miss it? No, no. And you're exactly right. I mean, we have entertained the plaintiff's arguments for the sake of giving the court answers to everything that's been presented. But treating this case on the pleadings at the time frame of last summer, when this case was dismissed, makes it exceedingly easy. And I think the fact that the plaintiffs haven't continued to defend those arguments confirms they don't have arguments about why those. A assuming arguendo that a governor's executive order is public policy and that employees can't employers cannot fire based on something that violates public policy. This case didn't involve that at the time. So we don't decide anything else and just simply affirm and go home. Is that an appropriate opinion in this case, in your view? Yes, it is. I mean, the case, it could be as open and shut as that. And there's a lot the court could say about these other issues. We think this is not a hard case, no matter how you come at it. But, yes, you could keep it as narrow as that. We need to certify to the Supreme Court, the Texas Supreme Court, if we were going to certify something, what would that be? Because I'm struggling with what can be answered that would affect this June 2021. And again, if we evolve all the way to June 2022, the world has changed, particularly the COVID world. Right. Well, and I will defer to Mr. Woodfill to frame the issue that he's asking the court to certify. I think it has to do with the narrow issue of emergency use authorizations. And as the court points out, we're now in a world where that's not the state of these issues. It is inconceivable that the Texas Supreme Court would create a new common law exception, even for this emergency use authorization situation, especially in a place where Texas law is clear, not only employment at will doctrine is clear, but the Health and Safety Code, Chapter 224, requiring hospitals to have vaccine policies and requiring a COVID vaccine since December 2020 is clear. And the other thing I'd call to the court's attention is that the Texas Supreme Court looks to the legislature and what they're doing in an area. The legislature has been active in considering narrow exceptions to employment at will. They've created a number over the years. And the legislature was presented 10 times in 2021 with opportunities to create statutory claims like what Mr. Whitfield said. Us deciding the public policy, I'm more asking the question, I don't think we should just randomly certify things to the Texas Supreme Court. Every time we have a question about Texas law, we just send it over there. They're a very busy court. They're very gracious. They grant most of our certifications and we very much appreciate that. And so I want to be sure we're being gracious in the sending because they're so gracious in the receiving. And I'm just a little clueless about what we could ask, because even if we assume arguendo, this is a public policy. I'm struggling to find the public policy that was violated in June 2021. And again, if we evolve to today, it's a very different world. We've got the federal law about hospitals. We've got the fact that Pfizer has been approved. We've got all this other stuff. Well, and remember, in June 2021, the Texas legislature had already rejected bills that would have codified the position that these plaintiffs are asserting, that they should have some unlawful employment. Yeah, but their argument is the governor's executive order. You better not go against it. That's their argument. And that's what they think we should certify, whether the Texas Supreme Court agrees with that argument. And I'm just saying, even if that is accurate. Does it make a difference if we're just going to look at June 2021? No, but but I'm also saying, even in June 2021, you could infer from the legislature's inaction that this was not Texas public policy. Well, but he argued that they also didn't overrule Governor Abbott's various executive orders. Well, right. And I think the court can certainly consider that you don't look at state public policy through executive orders. This court holds you, you determine state public policy through the Constitution and through the statutes and through judicial opinions. So executive orders, as interesting as they are to talk about, are not indicative of a broader state public policy. And the GA40 certainly did not purport to create any exception to employment. It's dealing with exemptions and saying you cannot mandate people who claim these exemptions, which, again, is not an issue in this case. It doesn't create a private right of action. I mean, there's so many reasons that GA40, even if it had the force of law and even if it had been issued during the relevant time frame, would not apply to this case. And Judge Haynes, as you pointed out as well, it's now been preempted. So if you were looking more expansively at the time frame, GA40 does not have any force of law. I don't see that there's anything to look to the expansive time frame. I thought the claim was based upon the flavor of what the executive orders coming out. You could see that the state of Texas supported more everybody chooses for themselves policy and you shouldn't be penalized for what you choose. That I think that's what the argument is. But that's what the argument is before us. Ms. Pfeiffer, we were talking about what types of affirmances would be appropriate. And that should also be a probably and it's not foreshadowing, but I think that as a appellee to be talking about that at oral argument is probably a positive thing that you want to talk about. Could an affirmance say, we make no statement as to whether or not there is a Texas public policy exception akin to Sabine Pilate for this claim because this case is about whether the federal regulations provided a Sabine Pilate-esque claim. And those clearly did not. And that's what the district court held. And we do not opine on what was not pleaded and argued before the district court. And we all go home. Yes. That'd be the cleanest thing rather than opining on something that was not pled or argued in the district court and over which is the only thing that there is any debate whatsoever. Yes. And the court absolutely could keep this as narrow and clean as that. Okay. Anything else you want to tell us? No. If the court has no further questions, I think I've said everything I need to say. Mr. Woodfill, you need to address this then. Thank you. Thank you, Ms. Pfeiffer. Why? Why? That's not the right answer here. Then you live to fight another day on your Texas deal that we don't have before us and which was not argued in the district court or ruled on by the district court or properly pled. Sure, Judge. Well, I would take exception to whether or not it was argued in the district court. In fact, it was argued on numerous occasions. And if you take a look at the record, you'll see in our hearing on the motion to dismiss, we actually talked about G835 and vaccine passports. If you look at the arguments made by counsel for Methodist, he made it very clear that we were trying to get the court to recognize a new exception to the employment at will doctrine. If you look at different portions of the record, which I can cite the court to, we make it very clear that we believe this is a case of first impression and are asking the court. But while you are in the federal district court on this case, what executive order expressly banned private businesses from requiring their employees, not their customers, blah, blah, blah, their employees from being vaccinated at that time? No particular executive. So what is why is that in front of us? Because the question, your honor, that we had posed in the state court before it was removed was what is the public policy of the state of Texas? What we saw is a series of executive orders, starting with G835, saying that these vaccines, these experimental vaccines needed to be voluntary, that they couldn't be mandatory. And Governor Abbott, like my plan, was not in the context of a hospital requiring their people until G840. But so, so even if we assume arguendo that those GAs are binding on businesses and that they can't violate them in terms of their employment decisions, we don't have it. I mean, you you've said that. So I I'm wondering, I mean, you spent a ton of your time in your brief on G840. You've got to admit that. If I could address that, Judge, because what we saw was an evolving process. So by the time when G835 was filed, this wasn't an issue. Methodist was the first to put this policy in place and they put this policy in place. Effectively, April 15th was when the tier one or phase one employees were terminated. The executives, the phase two, the nurses, the frontline individuals, that policy effectively ended June 7th was when the termination occurred. And then they had the 14 days with they were suspended without pay to go and get the terminated. So what we see then other hospitals later and employers later gravitating to the same policy, Governor Abbott, then, in my opinion, appreciates what's going on and decides to issue G840, which is consistent with what we saw in G835, G836, G838 and G839. The same public policy pronouncement that these vaccines time and time again, he says it should be voluntary. And when you say your job is conditioned, orders originally were deferential to business decisions on their own businesses and then later were more concerned about individuals or whatever. I'm not trying to get into the politics of it. I'm simply articulating. So I'm not agreeing or disagreeing with the governor. Please understand that I'm just articulating how it evolved. There was a time period where private businesses could make their own decision on, for example, requiring a mask. But the government couldn't. And then that evolved. Right. So, again, if we are just limited to this, this couple of weeks you were in the district court, I don't see how, again, assuming arguendo that we defer totally to the governor, how that helps you in this case. Well, I think there's a very big difference between a mask and a restriction on operational limits when you're requiring someone to inject something into their body as a condition for employment that cannot be removed. And as this particular issue evolved, because as the court is well aware, the first shot was given in December of 2020. It was Methodist who, in their words, led the way by creating the first mandatory vaccine policy. At the time, the drug was in the emergency use status. So we see the evolution of these executive orders that are consistent with a public policy that says an employee should not be able to force an employer to take an experimental or investigational drug as a condition for employment. And as Ms. Pfeiffer correctly said, Texas law is clear, her opinion. I disagree with what Texas law. I don't think Texas law has been answered with respect to this issue. And that's why we're asking the court to certify it to the Texas Supreme Court, because it has such great implications. Think about if there was an additional pandemic or disease that came in the future, would employers be required to terminate an individual for refusing to take an experimental drug, one that had not been fully approved by the FDA as a condition for employment? We believe that issue is ripe to be decided right now in that my 119 plaintiffs were fired for refusing to take an experimental drug, Your Honor. Counsel, Judge Haynes asked quite a few questions because your briefing had quite a few points about the DA40, but you don't need any executive orders at all to be making your public policy argument, do you? That's exactly right. That's the point I was trying to make, Your Honor, is that Governor Abbott simply memorialized the public policy of the state of Texas. The question becomes for either this court or arguably the Texas Supreme Court is, what is the public policy of the state of Texas? So when we go back to a subpoenaed pilot type situation. I think you've answered the question and your time is up. And so thank you very much. And we have this case and it is submitted and we appreciate you.